UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

HEALTHY VISION ASSOCIATION,
et al.,

      Plaintiffs,

v.                                                                    No. 5:23-CV-167-H

CASSIE BROWN,

      Defendant.

## MEMORANDUM OPINION AND ORDER

With the aim of promoting fair competition in the vision-care industry, Texas House Bill 1696 prohibits managed-care plans from "incentiviz[ing], recommend[ing], encourag[ing], persuad[ing], or attempt[ing] to persuade an enrollee to obtain covered or uncovered products or services" at any participating provider over another. Tex. Ins. Code § 1451.153(a)(5). The plaintiffs, who are industry stakeholders, challenged the law as a violation of the First Amendment. The Fifth Circuit upheld this Court's preliminary injunction of the law and remanded to permit the State to explain more clearly the law's potentially legitimate sweep.

On remand, the State largely ignores the Fifth Circuit's ruling and asks this Court to apply a different legal standard entirely. The intervenor-defendants—the plaintiffs' industry competitors—do the same. They also present the Court with the only new piece of summary-judgment evidence: one four-page declaration from intervenor Simaan Shini, which adds little of substance. Because the Court is bound by the law of the case, and because the State and intervenor-defendants have not advanced any plausibly legitimate sweep of the statute, the Court grants the plaintiffs' motion for summary judgment.

1.    **Factual and Procedural Background**

A.    **Factual Background**

During the 88th Legislative Session, the Texas Legislature passed Texas House Bill 1696,[1] which amended sections of the Texas Insurance Code governing the relationship between managed-care plans and vision-care providers.  H.B. 1696's Statement of Intent describes its purpose as "add[ing] transparency for patients . . . and promot[ing] local competition and patient choice . . . by establishing prohibitions against certain business practices and contractual terms to specify the ways in which managed-care plans are not allowed to control optometrists and their practices."  H. Ins. Comm., Bill Analysis, H.B. 1696, 88th Leg., Reg. Sess., at 1 (Tex. 2023).[2]

The business practices addressed by the law can be summarized as patient steering by way of vertical integration.  The public comments quoted in the plaintiffs' summary-judgment motion express concerns about the "rapidly consolidating and vertically integrating" vision-care industry.  Dkt. No. 92 at 23.  The plaintiffs are a prime example: plaintiff Vision Service Plan (VSP), an insurance company that provides managed vision-care plans, owns optometry retailer and co-plaintiff Visionworks of America.  Dkt. No. 91 at 9.  VSP offers a discount and rebate program for VSP members called "Premier Edge."  Dkt. No. 1 at 7.  A private practice can be designated as "Premier Edge" when, in addition to other qualifications, they "reach[] a certain purchase threshold of frames and lenses from

---

[1] The bill was codified at Texas Insurance Code §§ 1451.151 and 1451.153(a)(4)–(5) and went into effect January 1, 2024.  *See* Dkt. No. 77 at 3, 6.  This Order refers to it as "H.B. 1696" and the "law" interchangeably.

[2] During the same legislative session, "the Texas legislature prohibited insurers and providers in the general healthcare market from entering into private contracts with 'anti-steering' or 'anti-tiering' provisions—'the same type of anti-competitive restrictions that H.B. 1696 seeks to impose upon vision care insurance plans.'"  *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 395 (5th Cir. 2025).

VSP-subsidiary manufacturers." *Id.* at 8. All Visionworks locations, consequently, are designated as "Premier Edge." *Id.*

These vertically integrated managed vision-care plans pose a seemingly insurmountable threat to smaller market participants. After all, such a managed vision-care plan "may differentiate between in-network providers by attempting to steer patients to doctors at locations where products of businesses owned by the plans are being sold," thereby "financially control[ling] doctors by incentivizing or disincentivizing plan benefits and reimbursements to prefer the products and services they own." *Healthy Vision Ass'n*, 138 F.4th at 394 (internal quotation marks omitted).

H.B. 1696 thus aims to promote "transparency, fair competition, and patient choice," Dkt. No. 90-1 at 14, by "limiting the information that managed vision-care plans can provide to their enrollees," *Healthy Vision Ass'n*, 138 F.4th at 393. For example, the law prohibits managed-care plans from "identify[ing] a participating optometrist . . . based on," among other things, "a discount or incentive offered on a medical or vision-care product or service . . . that is not a covered product or service . . . by the optometrist." Tex. Ins. Code § 1451.153(a)(4). So if you are an independent optometrist whose products or services are more expensive than most, you are in luck: the law prohibits managed-care plans from so much as identifying your competition as a more affordable option. Consumers, on the other hand, can take comfort in knowing that they are protected against steering, even if only by a price tag.

The plaintiffs are various stakeholders and participants in the vision-care industry. Dkt. No. 91 at 9. Plaintiff Vision Service Plan Insurance Co. (VSP) provides managed vision-care plans. *Id.* Plaintiff National Association of Vision Care Plans, Inc. includes

such vision-care plans as members. *Id.* Plaintiff Healthy Vision Association is a nonprofit organization that provides its members access to resources for vision health, including enrollment in VSP plans. *Id.* VSP owns optometry retailer and plaintiff Visionworks of America, Inc. *Id.* Plaintiff Greg Hogan is an "independent optometrist who is a VSP Premier Edge provider practicing next to a Visionworks location." *Id.* Plaintiff Bobby Montgomery "has VSP insurance and has purchased glasses from a Visionworks store for the past several years." *Id.* The remaining defendant, Cassie Brown, is the Commissioner of the Texas Department of Insurance. *Id.* The intervenor-defendants are the Texas Optometric Association, an association of optometrists licensed to practice in Texas, and Dr. Simaan Shini, an optometrist licensed in Texas. *Id.* at 9–10.

### B.    Procedural History

The plaintiffs brought this lawsuit in August 2023 to enjoin the enforcement of certain sections of H.B. 1696. *See* Dkt. No. 1. The plaintiffs alleged that the law imposed an unconstitutional burden on their rights to commercial speech, freedom of association, and equal protection under the First and Fourteenth Amendments of the United States Constitution. *Id.* at 18–32. They requested that the Court:

(a)    Enter a permanent injunction enjoining the defendants from enforcing H.B. 1696, codified at Texas Insurance Code §§ 1451.151, 1451.153(4), and 1451.153(5);

(b)    Issue a declaratory judgment that H.B. 1696, codified at Texas Insurance Code §§ 1451.151, 1451.153(4), and 1451.153(5), violates the First and Fourteenth Amendments of the United States Constitution and are therefore unenforceable; and

(c)    Grant the plaintiffs all further relief, including an award of attorneys' fees under 42 U.S.C. § 1988 as later determined to be reasonable and necessary;

(d)    Award the plaintiffs any other relief that the Court deems just and equitable.

– 4 –

*Id.* at 32–33.  Weeks after filing the complaint, the plaintiffs moved for a TRO and preliminary injunction against enforcement of the statute.  Dkt. Nos. 6–8.  The defendants moved to dismiss, asserting sovereign immunity and contesting the merits.  Dkt. Nos. 12–13.  This Court denied the motion to dismiss (Dkt. No. 56) and granted the motion for a preliminary injunction (Dkt. No. 57).  The defendants appealed the denial of the sovereign immunity defense, as well as the grant of the preliminary injunction.  Dkt. No. 58.  While the interlocutory appeal was pending, this case was reassigned from Judge Cummings to the undersigned on December 23, 2024.  Dkt. No. 72.

On appeal, the Fifth Circuit found that the plaintiffs were likely to succeed on their commercial-speech claims and that the equities favor a preliminary injunction against Texas Insurance Commissioner Cassie Brown.  *Healthy Vision Ass'n*, 138 F.4th at 393.  The Fifth Circuit, however, parted ways with this Court as to the sovereign immunity of the other defendants, in addition to the plaintiffs' free-association and equal-protection claims.  *See id.* Accordingly, the Fifth Circuit "affirm[ed] the denial of the motion to dismiss as to Commissioner Brown, vacate[d] the denial of the motion to dismiss as to Governor Abbott and Attorney General Paxton, affirm[ed] the preliminary injunction insofar as it [ran] against the Commissioner, vacate[d] the preliminary injunction as against the other defendants, and remand[ed] both orders for modification."  *Id.*

Crucially, the Fifth Circuit held that this Court was likely to find H.B. 1696 facially unconstitutional.  *Id.* at 406.  That is, unless "on a full hearing" the State could "explain with greater clarity some connection to the permissible regulation of fraud."  *Id.*

On remand, all parties moved for summary judgment (Dkt. Nos. 90–91; 93), but they largely argue past each other.  Responsive to the Fifth Circuit's analysis, the plaintiffs now

abandon their free-association and equal-protection claims and ask for summary judgment solely on commercial-speech grounds.  Dkt. Nos. 91 at 11 n.3; 97 at 8 n.1.  The State and intervenor-defendants, however, seek to trade the difficult task given to them by the Fifth Circuit for an impossible one: side-stepping the Fifth Circuit's binding legal conclusions.  As for new evidence, the State provides none; the intervenor-defendants provide only one four-page declaration from intervenor Dr. Simaan Shini.  Dkt. No. 100 at 3–6.

**2.    Legal Standards**

**A.    Summary Judgment**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  If the moving party carries its burden of showing that there is no genuine dispute as to any material fact, the burden shifts to the nonmovant to introduce specific facts or produce evidence that shows the existence of a genuine dispute regarding a material fact that prevents the grant of summary judgment in the movant's favor.  Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 322–23.  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When the moving party has met its burden, "the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  Rather, the nonmovant must identify

specific evidence in the record and articulate how the evidence supports its claim.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014); *see also* Fed. R. Civ. P. 56(c)(1)(A). Additionally, Rule 56 does not impose a duty on the Court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In cases involving cross-motions for summary judgment, "the motions are reviewed independently, with evidence and inferences taken in the light most favorable to the nonmoving party."  *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005).

### B.    Permanent Injunction

A "court may grant a permanent injunction without a trial on the merits if there are no material issues of fact and the issues of law have been correctly resolved."  *Calmes v. United States*, 926 F. Supp. 582, 591 (N.D. Tex. 1996).  The standard is "essentially the same" as the standard for a preliminary injunction.  *Id.* (quotation omitted).  To obtain a permanent injunction, a plaintiff must demonstrate: (1) that it succeeded on the merits; (2) that it will suffer irreparable injury if an injunction is not granted; (3) that a balance of the hardships between the plaintiff and the defendant favors equitable relief; and (4) that an injunction will not harm the public interest.  *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021); *see also eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Unlike for a preliminary injunction, the plaintiff must show actual success on the merits, rather than a mere likelihood of success.  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12

(1987); *see also Millennium Rests. Grp., Inc. v. City of Dallas*, 191 F. Supp. 2d 802, 809 (N.D. Tex. 2002).

**3.    Analysis**

The Court grants in full the plaintiffs' motion for summary judgment and denies the State's and intervenor-defendants' motions for summary judgment. There are two narrow questions remaining on remand. First, have the plaintiffs shown that they are entitled to permanent injunctive relief on commercial-speech grounds? And second, have they shown that H.B. 1696 is facially unconstitutional under the First Amendment? On both counts, the answer is yes.

For three reasons, the Fifth Circuit held that H.B. 1696 likely fails the *Central Hudson* test. First, the law "applies to truthful and nonmisleading speech concerning lawful activity." *Healthy Vision Ass'n*, 138 F.4th at 402. Next, the state's asserted interests, although substantial, "are not properly advanced by requiring 'that consumers should be misled or uninformed for their own protection.'" *Id.* at 404 (quoting *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 497 (1995) (Stevens, J., concurring in the judgment)). Finally, in the absence of an explanation as to "why H.B. 1696's limitations on speech directly advance" the government's asserted interests "in a manner no more extensive than necessary," the Fifth Circuit concluded that the plaintiffs were likely to succeed on the merits. *Id.* at 405. The Fifth Circuit therefore put the burden on the State and intervenor-defendants to "explain with greater clarity some connection to the permissible regulation of fraud." *Id.* at 406.

But nothing—aside from the State's and intervenor-defendants' legal theory—has materially changed at the summary-judgment stage. The Court therefore finds that the

plaintiffs have succeeded on the merits and are entitled to a permanent injunction.  Further, because the State and intervenor-defendants have not "advanced any legitimate sweep of the statute as properly construed," the Court finds that no application of the relevant provisions serves a legitimate state interest.  *Id.*  The law is facially unconstitutional under the First Amendment.

### A.    This Court is bound by the law of the case doctrine to the Fifth Circuit's holding: H.B. 1696 regulates commercial speech.

The Fifth Circuit held that H.B. 1696 regulates protectable commercial speech.  The panel explained that "it does not seem possible for VSP to tell its members in Texas which optometrists within its network sell what vision care products without identifying optometrists on the basis of what vision care products they stock."  *Id.* at 403 (citation modified).  Moreover, "it is hard to see how VSP can inform its members which retailers are Premier Edge locations that may offer discounts and savings without giving members an incentive (discounts and savings) to obtain products at those retailers."  *Id.* (citation modified).  As explained in detail below, the Fifth Circuit's determination that this speech is protectable commercial speech is a legal determination that binds this Court as law of the case.  Therefore, the Court's analysis proceeds under the *Central Hudson* test.  And likewise, insofar as the Fifth Circuit's *Central Hudson* analysis relied on purely legal determinations, the Court is bound by such determinations under the law of the case doctrine.

### i.    The law of the case doctrine

"The law of the case doctrine precludes reexamination of issues decided on appeal, explicitly or by necessary implication."  *Rodriguez v. Cruz*, 296 F. Supp. 2d 726, 733 (S.D. Tex. 2003) (citing *Chapman v. Nat'l Aeronautics & Space Admin.*, 736 F.2d 238, 241 (5th Cir. 1984)).  This principle applies where, as here, a party files an interlocutory appeal of a

court's preliminary injunction. *See* Dkt. No. 58. "As to decisions of law, the interlocutory appeal will establish law of the case." *Royal Ins. Co. of Am. v. Quinn-L Cap. Corp.*, 3 F.3d 877, 881 (5th Cir. 1993). "As to factual determinations, however, an interlocutory appeal of a preliminary injunction often will not establish law of the case," *id.*, "because the lesser standard of review applied during an appeal of a preliminary injunction necessarily means that the factual issues differ from those on direct appeal," *Gaalla v. Brown*, 460 F. App'x 469, 476 (5th Cir. 2012) (quotation omitted).

Of course, the ultimate question of "whether free speech rights have been infringed presents a mixed question of law and fact." *Siders v. City of Brandon*, 123 F.4th 293, 300 (5th Cir. 2024). But the narrower question of "whether . . . speech is protected[] is a question of law." *Malin v. Orleans Par. Commc'ns Dist.*, 718 F. App'x 264, 268 (5th Cir. 2018) (quoting *Rankin v. McPherson*, 483 U.S. 378, 386 n.9 (1987)). Likewise, "the substantiality of the State's interest is a legal question to be determined as a matter of law." *Veasey v. Abbott*, 830 F.3d 216, 314 (5th Cir. 2016) (Jones, J., concurring in part) (citing *LULAC v. Clements*, 999 F.2d 831, 871 (5th Cir. 1993)).

### ii.  The *Central Hudson* test.

"The First Amendment, as applied to the states through the Fourteenth Amendment, generally protects commercial speech from unwarranted governmental regulation where the speech is not false, deceptive, or misleading." *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 165 (5th Cir. 2007). And although commercial speech is protected by the First Amendment, "courts give to it 'lesser protection . . . than to other constitutionally guaranteed expression.'" *Am. Acad. of Implant Dentistry v. Parker*, 860 F.3d 300, 306 (5th Cir. 2017) (quoting *Central Hudson*, 447 U.S. at 563).

That "lesser protection" takes the form of the four-part test announced in *Central Hudson*: First, the Court asks whether the commercial speech concerns unlawful activity or is misleading. *Allstate Ins. Co.*, 495 F.3d at 165. If the answer is yes, the inquiry stops there because the speech is not protected by the First Amendment. *Id.* If the answer is no, however, the Court asks three further questions. First, the Court asks whether the asserted governmental interest is substantial, and second, whether the regulation directly advances that interest. *Id.* Finally, the Court must ensure the regulation is not more extensive than necessary to serve that interest. *Id.* A regulation covering protected speech will be found constitutional only if these latter three questions are answered in the affirmative. *Id.* "The party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n.20 (1983).

### iii.      The Fifth Circuit's holding

After applying the *Central Hudson* test, the Fifth Circuit held that the plaintiffs were likely to succeed on the merits of their commercial-speech claim. *Healthy Vision Ass'n*, 138 F.4th at 405. In so ruling, the panel was careful to distinguish between the questions of law and mixed questions of law and fact that so often pervade First Amendment claims. As noted above, the law of the case doctrine obligates the Court to apply the Fifth Circuit's legal determinations described below.

First, the panel held that the law "applies to truthful and nonmisleading speech concerning lawful activity" and that "the statutory text . . . compel[s] this interpretation." *Id.* at 402–03. The panel compared this case to *Allstate*, where the Fifth Circuit struck down certain provisions of the Texas Occupational Code on commercial-speech grounds. 495 F.3d at 168. H.B. 1696 is strikingly similar to the law at issue in *Allstate*, H.B. 1131. That

law prohibited insurers from, among other things, "recommending that policyholders have their vehicles repaired at tied repair facilities, except to the same extent it recommends other repair facilities with whom the insurer has entered into a referral agreement." *Id.* at 165 (citing Tex. Occ. Code § 2306.006(9)). There, as here, "the underlying business affiliation was not itself illegal," and the "recommendation of tied rather than other body shops 'd[id] not involve an inherently false or misleading representation.'" *Healthy Vision Ass'n*, 138 F.4th at 403 (citing *Allstate*, 495 F.3d at 166). *Central Hudson*'s threshold inquiry is thus satisfied because H.B. 1696 regulates protected speech.

Second, the panel held that the State's asserted interests were legitimate and likely substantial. *Id.* at 404. But "such interests are not properly advanced by requiring that consumers should be misled or uninformed for their own protection." *Id.* (quotation omitted). The panel held that *Allstate* forbids the conclusion "that the government may protect patients by leaving them in the dark about which optometrists within VSP's network sell what vision care products or which retailers offer discounts and savings." *Id.* (citation modified). Thus, the State fails the third *Central Hudson* inquiry insofar as they seek to prevent the dissemination of truthful information. *See id.* at 406.

Last, the panel rejected the State's argument that the challenged provisions could be interpreted to apply only to "inherently deceptive communications" and are therefore facially valid. *Id.* at 405–06. The panel held that such a construction "is not consistent with the statutory text," "would effectively redraft the statute to insert the phrase 'misleading[,]'" and is therefore one that "First Amendment case law tells us the Constitution does not permit." *Id.*

The Fifth Circuit, however, was careful to leave certain issues open for further factual development. As to the *Central Hudson* test, the panel noted that the State "h[ad] not explained why it would not further the asserted state interests, for example, to impose disclosure requirements on VSP concerning its interest in Visionworks or affiliation with Premier Edge practitioners." *Id.* at 404 (citing *Allstate*, 495 F.3d at 168). Because the State failed to "explain[] why H.B. 1696's limitations on speech directly advance the governmental interests they have asserted in a manner no more extensive than necessary," the panel held that the plaintiffs were likely to succeed on the merits. *Id.* at 405.

As to the issue of facial invalidation, the panel noted that the State had not "argued any nonexpressive scope for the term 'incentivize,'" and thus the panel was "not in a position to consider whether some expressive applications of this term might be justified under *Central Hudson* as regulations of activity that the statute additionally makes illegal." *Id.* at 403 n.4. Thus, the panel suggested that the State, on remand, "explain with greater clarity some connection to the permissible regulation of fraud" in order to avoid facial invalidation of the law. *Id.* at 406. This is necessary, it explained, because Fifth Circuit precedent forecloses the State's argument that "the [g]overnment has an interest in preventing the dissemination of truthful commercial information in order to prevent members of the public from making bad decisions with that information." *Id.* (quotation omitted).

**B.    The State's and intervenor-defendants' arguments against applying *Central Hudson* fall short.**

Despite the panel's holding, the law of the case doctrine, and their own prior admissions, the State and intervenor-defendants now contend that H.B. 1696 does not regulate speech at all. The State asserts that the law governs "non-expressive conduct rather

than speech." Dkt. No. 90-1 at 11. And because the law is, "[o]n its face," "a constitutional exercise of the State's authority to regulate the conduct of professions and professionals within its borders," *id.* at 9, the State asks the Court to analyze the plaintiffs' claims by reference to *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47 (2006) (*FAIR*) or, alternatively, *United States v. O'Brien*, 391 U.S. 367 (1968).

The intervenor-defendants agree, but they propose that the Court apply the framework laid out in *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949). Dkt. No. 94 at 16. In *Giboney*, the Supreme Court held that heightened scrutiny under the First Amendment did not apply where the government "ma[de] a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language." 336 U.S. at 502. They contend that *Giboney* governs this case because H.B. 1696 prohibits "the *conduct* of steering—directing patients based on the insurer's own financial interests—not speech." Dkt. No. 94 at 18.

The plaintiffs, citing the Fifth Circuit's opinion in this case, claim that the law violates their First Amendment commercial-speech rights by "prevent[ing] insurers, vision care plans, and others from communicating non-misleading and truthful information about medical care options and benefits to vision care patients." Dkt. No. 91 at 30 (citing *Healthy Vision Ass'n*, 138 F.4th at 393, 402–06). Accordingly, they would have the Court apply the *Central Hudson* test in resolving the parties' summary-judgment motions. *Id.*

The speech-conduct dichotomy is "notoriously foggy." *Jenevein v. Willing*, 493 F.3d 551, 562 (5th Cir. 2007). This lack of clarity persists in part because "conduct and speech are not hermetically sealed categories." *Tex. Dep't of Ins. v. Stonewater Roofing, Ltd. Co.*, 696 S.W.3d 646, 667 (Tex. 2024) (Young, J., concurring). Indeed, seemingly any speech or

expression can be readily recast as mere conduct.  The Supreme Court's decision in *303 Creative* is a paradigmatic example.  *See 303 Creative LLC v. Elenis*, 600 U.S. 570 (2023).  There, the Supreme Court passionately disagreed as to whether the Colorado law at issue compelled the plaintiff's speech or merely regulated discriminatory conduct.  *Compare id.* at 578–79 ("[The State] seeks to use its law to compel an individual to create speech she does not believe."), *with id.* at 604 (Sotomayor, J., dissenting) ("[T]he law in question targets conduct, not speech, for regulation, and the *act* of discrimination has never constituted protected expression under the First Amendment.").

But no such difficulty is presented here.  First, the Fifth Circuit held that "[t]he statute here applies to truthful and nonmisleading speech concerning lawful activity," that "the statutory text . . . compel[s] this interpretation," and therefore *Central Hudson* is the applicable test.  *Healthy Vision Ass'n*, 138 F.4th at 402–03.  Moreover, the plaintiffs point to 15 prior instances during this litigation in which the State conceded "that H.B. 1696 applies to commercial speech."  Dkt. Nos. 97 at 7; 97-1 at 4–5.  Now—on remand, following an unfavorable ruling from the Fifth Circuit—the State and intervenor-defendants understandably try to shift gears.  The State further asserts, among other things, that "the challenged laws may be construed to restrict unprotected, non-expressive conduct or at most non-protected speech."  Dkt. No. 90-1 at 19.  But all of this is unavailing because, as explained above, the Court is bound by the law of the case.

Moreover, even if not bound by law of the case, the Court would reach the same conclusion.  First, *FAIR* is readily distinguishable: there, the Supreme Court upheld the law at issue because it "neither limits what [the respondents] may say nor requires them to say anything."  547 U.S. at 60.  That is not the case here, where the law forbids "identify[ing]"

optometrists based on incentives or certain business relationships, as well as "incentiviz[ing], recommend[ing], encourag[ing], persuad[ing], or attempt[ing] to persuade" enrollees to obtain certain products or services. Tex. Ins. Code § 1451.153(a)(5). The State and intervenor-defendants have not shown how the regulated "conduct" could be carried out, other than by speech. And as the State previously conceded, the law "regulat[es] . . . commercial speech in the insurance marketplace." Dkt. No. 13 at 36. The Court agrees.

*O'Brien* is inapposite for similar reasons. There, the Supreme Court held that "when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." 391 U.S. at 376 (internal quotation marks omitted). But the State here does not identify the nonspeech element regulated by the challenged provisions. Nor could it, for the reasons given above. A far cry from the draft-card burning at issue in *O'Brien*, H.B. 1696 regulates what the plaintiffs may actually say. Thus, *O'Brien* does not apply.

Finally, the intervenor-defendants' suggested standard, *Giboney*, misses the mark entirely. In *Giboney*, the Supreme Court articulated a common-sensical principle: the First Amendment does not shield violations of law committed via speech. 336 U.S. at 502. But where is the underlying violation of law in this case? According to the intervenor-defendants, it is H.B. 1696—the very speech restriction at issue. *Giboney*'s principle is solid, but it cannot bear such contortions. The First Amendment would be a parchment promise indeed if governments could merely pass a law rendering certain speech illegal and, once challenged, evade heightened scrutiny by appealing to the illegality of the restricted speech. Happily, the law compels no such circularity.

– 16 –

**C.**    **The plaintiffs have carried their burden to obtain a permanent injunction.**

The Fifth Circuit held that H.B. 1696 failed the *Central Hudson* test and, thus, the

plaintiffs were likely to succeed on the merits of their commercial-speech claim.  The State

and intervenor-defendants have done nothing to call that likelihood into question.  Rather,

they rehash old arguments that the Fifth Circuit already rejected.  Accordingly, the Court

finds that the plaintiffs have carried their burden to obtain a permanent injunction.

**i.**    **The plaintiffs succeed on the merits: The law fails the *Central Hudson* test and therefore violates the First Amendment.**

First, and most importantly, H.B. 1696 fails the *Central Hudson* test because, as the

Fifth Circuit explained, it restricts protected speech, does not properly advance the State's

interest, and is more extensive than necessary to serve that interest.  Because the State does

not bear its burden of justifying its restriction of commercial speech, *see Bolger*, 463 U.S. at

71 n.20, the plaintiffs demonstrate actual success on the merits.

As to the first inquiry, the Fifth Circuit spoke clearly: "The statute here applies to

truthful and nonmisleading speech concerning lawful activity."  *Healthy Vision Ass'n*, 138

F.4th at 402; *see also Rankin*, 483 U.S. at 386 n.9 ("[W]hether the speech is protected[] is a

question of law.").  For example, H.B. 1696 tells insurers that they cannot tell their insureds

about benefits offered by affiliated providers.  *See Healthy Vision Ass'n*, 138 F.4th at 403–04.

And it does so irrespective of such statements' veracity or tendency to mislead.  *See id.*  In

sum, it is a restriction on protected speech.

As to the second and third inquiries, the State undoubtedly has a substantial interest

in ensuring "local competition and patient choice" in the vision-care marketplace.  H. Ins.

Comm., Bill Analysis, H.B. 1696, 88th Leg., Reg. Sess., at 1 (Tex. 2023).  The intervenor-

defendants contend that "the depth of how H.B. 1696 directly advances" those interests

– 17 –

"has not been fully considered yet." Dkt. No. 94 at 32. In support of this contention, however, the intervenor-defendants present only one piece of evidence not previously considered: a four-page declaration from Dr. Simaan Shini that merely describes VSP's Premier Edge program. *See* Dkt. No. 100 at 3–6. It thus bears repeating: "The party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Bolger*, 463 U.S. at 71 n.20. Given the complete lack of relevant evidence presented after remand, the State and intervenor-defendants fall well short of carrying this burden.

Moreover, the Fifth Circuit held that the State's asserted "interests are not properly advanced by requiring that consumers should be misled or uninformed for their own protection." *Healthy Vision Ass'n*, 138 F.4th at 404 (internal quotation marks omitted). Indeed, "[Fifth Circuit] precedent squarely compels the determination that Texas's regulatory approach frustrates the asserted state interests of transparency and patient choice." *Id.*

As to the fourth inquiry, the State and intervenor-defendants cite *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469 (1989), in arguing that *Central Hudson*'s requirement that a regulation be "not more extensive than necessary" is not a least-restrictive-means test. Dkt. No. 94 at 35 (citing *Central Hudson*, 447 U.S. at 566). In response, the plaintiffs point to a later Supreme Court precedent requiring that "if the [g]overnment could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the [g]overnment must do so." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002); *see also Allstate*, 495 F.3d at 165 & nn.55–56 (citing *Thompson* in the *Central Hudson* standard).

The plaintiffs have the better of the argument. As the Fifth Circuit noted on appeal, "Texas could have attempted to serve its interest in pricing transparency and consumer choice by ensuring patient reception of *additional* information"—for example, by imposing "disclosure requirements on VSP concerning its interest in Visionworks or affiliation with" certain practitioners.[3] *Healthy Vision Ass'n*, 138 F.4th at 404 (citing *Allstate*, 495 F.3d at 168) (emphasis in original). The State contends that such a requirement "would not alter the program's negative effects" because "[m]anaged care providers would still be able to advertise Premier Edge participating providers more visibly than other participating providers, and powerful steering incentives . . . would still exist." Dkt. No. 99 at 18. But this explanation belies the State's consumer-protection-based defense of the law. *See* Dkt. No. 101 at 16. Indeed, such a requirement would empower consumers with *more* information. The State's remaining steering-based arguments, then, demonstrate an impermissible interest in "prevent[ing] members of the public from making bad decisions with th[at] information." *Healthy Vision Ass'n*, 138 F.4th at 406 (quotation omitted).

In light of these considerations, it is clear that the law fails the *Central Hudson* test. The plaintiffs have thus demonstrated success on the merits. *Millennium Rests. Grp.*, 191 F. Supp. 2d at 809.

---

[3] Notably, in Dr. Simaan Shini's declaration—the only new piece of summary-judgment evidence—Dr. Shini states that "VSP's webpage that advertises Premier Edge offers does not provide a disclaimer explaining what the Premier Edge program is or that Premier Edge providers are simply optometrists who buy more VSP-associated frames." Dkt. No. 100 at 5 ¶ 7. Dr. Shini says that H.B. 1696 is beneficial because it would prohibit such nondisclosure. *Id.* This narrow, disclosure-based endorsement of the law only lends further credence to the Fifth Circuit's holding that the law "is not sufficiently tailored to the State's interests," *Healthy Vision Ass'n*, 138 F.4th at 404, and undercuts the State's argument that such disclosures would be insufficient.

### ii.    The plaintiffs will suffer irreparable harm absent an injunction.

The plaintiffs contend, and the Court agrees, that H.B. 1696 "imposes unconstitutional restraints on [their] ability to share truthful information about affiliated providers and services, contract with plans, operate critical aspects of their businesses, and access important health care information, among other things." Dkt. No. 91 at 34. As the Fifth Circuit acknowledged on appeal, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Healthy Vision Ass'n*, 138 F.4th at 408 (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012)). H.B. 1696 "is to be enforced by the Commissioner, regulates VSP[,] and appears on the record presented likely to constrain its activities." *Id*. The State and intervenor-defendants have not challenged this finding. Accordingly, the plaintiffs have adequately proven that they will suffer irreparable harm if a permanent injunction is not granted.

### iii.    The balance of hardships favors equitable relief, and an injunction will not harm the public interest.

In suits against public officers, "[t]he balance of hardships and the public interest often overlap considerably." *Id*. (citing *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015)) (citation modified). "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (quotation omitted). Crucially, the Fifth Circuit explained that "precedent squarely compels the determination that Texas's regulatory approach frustrates the asserted state interests of transparency and patient choice." *Healthy Vision Ass'n*, 138 F.4th at 404. Thus, the equities support the grant of a permanent injunction.

**D.    H.B. 1696 is facially unconstitutional, but the Court limits the remedy to the parties before it.**

The Fifth Circuit gave the State a clear task on remand to prevent facial invalidation: "explain with greater clarity some connection to the permissible regulation of fraud." *Id.* at 406. But the State has only rehashed arguments that the Fifth Circuit already found impermissible. For instance, the State argues that "interpreting [H.B. 1696] to apply only to inherently deceptive communication . . . is consistent with [its] legislative history." Dkt. No. 90-1 at 17. But the Fifth Circuit found that this construction "would constitute a serious invasion of the province of the Texas Legislature." *Healthy Vision Ass'n*, 138 F.4th at 405 (internal quotation marks omitted). Binding precedent prevented the Fifth Circuit "from accepting the [State's and intervenor-defendants'] rebuttal on this issue," and thus the panel concluded that this Court "is likely to find that no application of the relevant provisions serves a legitimate state interest." *Id.* at 406.

Aside from these rehashed arguments, little has changed on remand. The bulk of the State's and intervenor-defendants' briefing is spent recharacterizing the plaintiffs' speech (*see* Dkt. Nos. 90; 93; 96; 98–99), all the while saying little to nothing about the legitimate sweep of H.B. 1696.[4] Without a plausible alternative construction of H.B. 1696, and without any persuasive argument as to the legitimate sweep of the statute as properly construed, the

---

[4] This is not for lack of opportunities. Indeed, the Fifth Circuit specifically identified multiple underdefined terms that the State and intervenor-defendants could have attempted to massage into compliance with *Central Hudson*. *See Healthy Vision Ass'n*, 138 F.4th at 403 ("The defendants have not attempted to elaborate any special interpretation of 'utilized,' and it does not seem possible for VSP to 'tell[] its members in Texas which optometrists within its network sell what vision care products' without identifying optometrists on the basis of what vision care products they stock."); *see id.* at n.4 ("The defendants have not argued any nonexpressive scope for the term 'incentivize,' so we are not in a position to consider whether some expressive applications of this term might be justified under *Central Hudson* as regulations of activity that the statute additionally makes illegal."). But no such attempt was made.

Court finds that no application of the relevant provisions serves a legitimate state interest. *See Healthy Vision Ass'n*, 138 F.4th at 406.  The law is facially invalid under the First Amendment.

Having determined that the plaintiffs have carried their burden and are thus entitled to a permanent injunction of H.B. 1696's enforcement against them, the Court must determine the proper scope of such relief.  In their complaint and summary-judgment motion, the plaintiffs ask for both declaratory and permanent-injunctive relief.  *See* Dkt. Nos. 1 at 32–33; 91 at 36.  No party, however, has briefed what they believe to be the appropriate scope of injunctive relief in light of the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025).

Here, the plaintiffs bring a facial challenge to H.B. 1696.  And although "classifying a lawsuit as facial or as-applied . . . does not speak at all to the substantive rule of law necessary to establish a constitutional violation," it does affect the "breadth of the remedy." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010)); *see also United States v. Texas*, 794 F. Supp. 3d 427, 454 (W.D. Tex. 2025).  *CASA*, however, held that federal courts may grant injunctive relief only to the parties "actually or constructively before it" and only "to the extent necessary and appropriate to afford them complete relief."  606 U.S. at 844, 861.

Therefore, the Court finds that the proper remedy is enjoining the State from enforcing H.B. 1696 against the plaintiffs or their members.  The plaintiffs have demonstrated that the law is facially invalid under the First Amendment.  And although a facial challenge "means a claim that the law is invalid *in toto*," *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n.5 (1982) (internal quotation marks omitted),

the Court finds that an injunction that runs against the plaintiffs and their members appropriately "administer[s] complete relief *between the parties.*"  *CASA*, 606 U.S. at 851 (emphasis in original) (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928)).

As for the plaintiffs' additional request for a declaratory judgment that the law is "void and unenforceable under the First Amendment," Dkt. No. 1 at 22, the Court declines to exercise its discretion to grant such relief.  "Ample precedent establishes that [a court] should not exercise [its] discretion to extend declaratory relief when a challenged law or policy no longer affects the plaintiff." *Texas v. EEOC*, 933 F.3d 433, 451 (5th Cir. 2019). Because the Court enjoins H.B. 1696's enforcement against the plaintiffs and their members, a declaratory judgment would be redundant and provide no further relief.  *Id.* at 451 n.38.

### 4.    Conclusion

In sum, the Court grants the plaintiffs' motion for summary judgment (Dkt. No. 91) and denies the State's (Dkt. No. 90) and intervenor-defendants' (Dkt. No. 93) motions for summary judgment.  The Court concludes that the plaintiffs have carried their burden to show their entitlement to a permanent injunction of H.B. 1696, codified as Texas Insurance Code §§ 1451.151, 1451.153(4), and 1451.153(5).  The Court further orders that the Texas Department of Insurance, the Texas Insurance Commissioner, their divisions, bureaus, agents, officers, commissioners, employees, and anyone acting in concert or participation with them, including their successors in office, are permanently enjoined from enforcing Texas Insurance Code §§ 1451.151, 1451.153(4), and 1451.153(5) against the plaintiffs or their members.

All other relief not specified here is denied.[5]

So ordered on February 19, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

---

[5] The plaintiffs request attorneys' fees pursuant to 42 U.S.C. § 1988. Dkt. Nos. 1 ¶ 124; 91 at 36. The Court denies their request without prejudice to their filing an appropriate motion after final judgment. *See Wulferic, LLC v. FDA*, 793 F. Supp. 3d 830, 852 (N.D. Tex. 2025); *see also Vaping Dragon LLC v. FDA*, No. 1:25-CV-081, 2026 WL 266277, at *18 n.12 (N.D. Tex. Feb. 2, 2026).